Emanuel Greenwald v. Commissioner.
Greenwald v. Commissioner
Docket No. 14081.
United States Tax Court
1948 Tax Ct. Memo LEXIS 177; 7 T.C.M. (CCH) 313; T.C.M. (RIA) 48092; May 28, 1948
*177 Harry Friedman, Esq., 540 Munsey Bldg., Washington, D.C., for the petitioner. William A. Schmitt, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency of $54,996.84 in income and victory tax of the petitioner for the calendar year 1943. The only issue for decision is whether the Commissioner erred in adding to the petitioner's income $63,689.44, which the petitioner contends is taxable not to him but his two partners, his wife and his son. Findings of Fact The petitioner filed his individual return for 1943 with the collector of internal revenue for the third district of New York. Matilda Greenwald is the wife of the petitioner, and Irwin Greenwald is one of their three children. He was born in 1918. He graduated from Harvard Law School in 1941 and, in that same year, was admitted to the Bar of the State of New York. The petitioner was engaged, for many years prior to 1943 in the business of jobbing children's and women's underwear in a partnership with his brother, Samuel. The petitioner had been having trouble with his brother for some time and promised his son, Irwin, that he would make him *178 a partner in the business as soon as he could terminate the arrangement with his brother, provided that Irwin would come into the business at once instead of practicing law. Irwin entered the business in July 1941 as an employee at a small salary. The partnership with the brother was dissolved on December 31, 1942. The petitioner, Matilda, and Irwin entered into a written partnership agreement on February 15, 1943, effective January 1, 1943. The petitioner gave Matilda $8,000 and Irwin $12,000 in stock in trade and money which they then contributed to the new partnership. The partnership was to carry on a business similar to that in which the petitioner had been engaged previously. The agreement recited that the petitioner had contributed $20,000, Irwin $12,000 and Matilda $8,000 as capital investments. It provided that the petitioner was to act in the capacity of general manager of the business and was to receive a salary of $150 per week in addition to his share of the profits. He was to "have the sole right and authority to sign and endorse all checks, notes, bills of exchange, negotiable instruments and any and all documents or instruments for the payment of money in behalf of *179 the copartnership firm." Irwin was to supervise and direct the sales and purchases and perform services as general sales manager and buyer. He was to receive as his salary $75 per week in addition to his share of the profits. Matilda was to act as office manager and general supervisor of the copartnership. She was to receive $50 per week in addition to her share of the profits. The petitioner was to have the broadest powers of other two partners. Paragraph 6 provided: Irwin and Matilda "are to have nothing whatever to do with the management of the business and the management thereof shall be solely vested in" the petitioner. Profits and losses were to be shared 50 per cent by the petitioner, 30 per cent by Irwin, and 20 per cent by Matilda. All of the partners were to employ themselves diligently in the business. The firm name and good will were to remain the property of the petitioner. Any partner could give notice of retirement from the firm, in which case the partnership was to continue unless the retiring partner was the petitioner. The petitioner was to have the option to purchase the interest of the retiring partner, under a method specified in the agreement. The dissolution *180 was to be as provided in the Uniform Partnership Law, at which time the assets were to be divided by the remaining partners in accordance with the provisions of the Uniform Partnership Law. No definite terminal date was mentioned. The petitioner was nervous and not in the best of physical condition prior to and during 1943. He desired to be relieved of a substantial part of his duties in connection with the business. Matilda was familiar with the business. The petitioner, Irwin, and Matilda actually operated the business as a partnership during all of 1943. The petitioner spent a part of his time handling credit and financial problems of the business. He also conferred with Irwin and Matilda on other business matters. Irwin did most of the buying, a large part of the selling and took complete charge of the operation of the business, with the exception of the relatively small part performed by the petitioner. Matilda helped with the buying, did some of the selling, supervised the office and joined with the other two in making decisions. Irwin and Matilda gave their full time to, and worked long hours at, the business during 1943. The very large increase in profits, realized during *181 1943, over those realized in prior years was due more to the efforts of Irwin, assisted by Matilda, than to the efforts of the petitioner during 1943. Irwin and Matilda contributed substantially to the control and management of the business and performed other services vital to that business during 1943. The petitioner, Irwin, and Matilda constituted a real partnership during 1943. The net profits shown on the partnership return for 1943, amounted to $134,073.04. They were credited to the three individual partners in accordance with the agreement, as follows: Emanuel
$67,686.52
Irwin
39,831.91
Matilda
26,554.61
The Commissioner, in determining the deficiency, held that all of the profits of the business were taxable to the petitioner, except for "salaries" of $2,000 for Irwin and $1,200 for Matilda. The stipulations of fact are incorporated herein by this reference. Opinion MURDOCK, Judge: Both parties recognize that the capital contributions of Irwin and Matilda were the result of recent gifts from the petitioner. The respondent relies leavily upon those parts of the partnership agreement which provide that the petitioner shall have the broadest powers *182 of supervision and management and Irwin and Matilda shall have nothing whatever to do with the management of the business. The significance of those and similar provisions fades in the light of the fact that the petitioner did not actually exercise such powers, but turned them over to his son who, more than either of the others, actually managed the business during 1943. The petitioner was not well and he materially limited his activities in the business. He was present, for the most part, at the place of business but he was not nearly as active as Irwin and Matilda during 1943. He performed some vital services, but so did they. Indeed, the evidence shows that they were responsible to a larger extent than was he for the increase in profits for that year over any that had been realized previously. The 1943 profits for the most part were allowed to remain in the business, but the evidence indicates that the petitioner exercised no control whatsoever over the partnership profits distributable to Irwin and Matilda. The services rendered by, and the participation of, Irwin and Matilda entitled them to be recognized as partners in accordance with their agreement. The Commissioner erred in *183 taxing their shares of the partnership profits to the petitioner. Decision will be entered under Rule 50.